UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

GARTH O'BRIEN BENNETT, A42-426-103,

     Petitioner,

   -v-                  13-CV-297-JTC

JANET NAPOLITANO, Secretary of Security U. S.
Department of Homeland Security;

ERIC H. HOLDER, Attorney General of the
United States;

MICHAEL PHILIPS, Field Office Director for
Detention and Removal, Buffalo Field Office,
Bureau of Immigration and Customs Enforcement;

Department of Homeland Security; and

TODD TRYON, Facility Director, Buffalo
Federal Detention Facility,

     Respondents.

---

## **INTRODUCTION**

Petitioner Garth O'Brien Bennett, an alien under a final order of removal from the United States, has filed this *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 seeking release from detention in the custody of the United States Department of Homeland Security, Immigration and Customs Enforcement (collectively, "DHS"), pending the execution of a final immigration order of removal issued against him. Item 1. As directed by this court's order entered April 2, 2013 (Item 3), respondent[1] has

---

[1]The only proper respondent in this proceeding is Todd Tryon, Assistant Field Office Director, Immigration and Customs Enforcement, Buffalo, New York Office, and Director of the Buffalo Federal Detention Facility, as he is "the person who has custody over [the petitioner]." 28 U.S.C. § 2242; *see also*

submitted an answer and return (Item 5), along with an accompanying memorandum of law (Item 6), in opposition to the petition[, and petitioner has submitted a reply (Items 7 & 8). For the reasons that follow, the petition is denied.

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Petitioner, a native and citizen of Jamaica, was admitted to the United States as a lawful permanent resident, on or about June 24, 1990. *See* Item 5-1 (Declaration of DHS Deportation Officer Juanita Payan), ¶ 5.

DHS records reflect that on October 5, 2007, while petitioner was being held at the Monroe County Jail in Rochester, New York, pending trial on state robbery charges, an immigration detainer was lodged against him by DHS Criminal Alien Program Officers. *Id.* at ¶ 7. On January 4, 2008, petitioner was convicted in Monroe County Court on two counts of robbery in the second degree, in violation of the N. Y. Penal Code § 160.10(1). He was sentenced to a 54-month term of incarceration and five years post-release supervision, and was placed in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"). *Id*. at ¶ 6.

On August 10, 2011, while in DOCCS' custody, petitioner was served with a Notice to Appear ("NTA") before an immigration judge to show cause why he should not be removed from the United States pursuant to Section 237(a)(2)(A)(iii) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1227 (a)(2)(A)(iii), as being an alien convicted of an aggravated felony relating to crimes of violence as defined in INA § 101(a)(43)(F), and as

---

§ 2243 ("The writ, or order to show cause shall be directed to the person having custody of the person detained."); *Rumsfeld v. Padilla*, 542 U.S. 426, 434–35 (2004).

an alien convicted of an aggravated felony relating to a theft or burglary offense, as defined in INA § 101(a)(43)(G). *Id.* at ¶ 8; Item 5-2 (Exh. A to Payan Decl.), pp. 12-14.

On February 29, 2012, Immigration Judge Roger F. Sagerman ordered petitioner removed from the United States to the United Kingdom or, alternatively, to Jamaica, based on the charges set forth in the NTA. Item 5-2, p. 11. Petitioner appealed the Immigration Judge's decision to the Board of Immigration Appeals ("BIA"). *Id.* at 10.

On March 23, 2012, upon his release from DOCCS' custody, petitioner was transferred to the custody of DHS for detention at the Buffalo Federal Detention Facility in Batavia, New York, pending execution of the Immigration Judge's order of removal, which became final on June 7, 2012, when the BIA dismissed petitioner's appeal. Item 5-1, ¶¶ 10, 11; *see* 8 C.F.R. § 1241.1(a) (immigration judge's order of removal becomes final upon BIA's dismissal of appeal). Immediately following the BIA's dismissal of petitioner's appeal, DHS took steps to execute the final order of removal. For example, on June 11, 2012, DHS sent a presentation packet to the Consulate General of Jamaica ("Consulate") in New York City requesting that a travel document be issued to facilitate petitioner's removal (Item 5-2, p. 17); on June 21, 2012, petitioner was interviewed by telephone by a Consulate representative (Item 5-1, ¶ 13); and, on June 27, 2012, DHS served petitioner with a formal Warning for Failure to Depart (Form I-229(a)), along with instructions for required action within 30 days to assist in the procurement of travel documents (Item 5-2, p. 9).

On July 12, 2012, petitioner filed in the United States Court of Appeals for the Second Circuit a petition for review of the BIA's dismissal order, along with a motion for stay of removal. *See* Item 5-2, pp. 18-20 (Docket Sheet, *Bennett v. Holder*, 2d Cir. Docket

No. 12-2764). As of the date of entry of this decision and order, the petition for review and motion for stay remain pending with the Second Circuit.

Meanwhile, DHS has conducted repeated reviews of petitioner's custody status, in accordance with immigration regulations. Specifically, in September 2012, the Office of Enforcement and Removal Operations ("ERO") reviewed petitioner's file and notified him that, based on the available information–including his criminal history–his detention would be continued because he would be a threat to the community and a flight risk if he were to be released from custody. *See* Item 5-2, pp. 6-7. Further custody review was conducted by DHS Headquarters Post Order Custody Review Unit ("HQPOCRU") in December 2012 and March 2013. *See id*. at 2-5. On March 21, 2013, HQPOCRU Chief Walter M. Ingram issued a Decision to Continue Detention advising petitioner that DHS was "unable to move forward" with his removal due to the petition for review pending with the Second Circuit. *Id.* at 2.

Petitioner filed this action on March 22, 2013, seeking habeas corpus relief pursuant to 28 U.S.C. § 2241 on the ground that his continued detention in post-removal-order custody is unlawful since it has exceeded the "presumptively reasonable" six-month period established under the due process standards set forth by the United States Supreme Court in *Zadvydas v. Davis*, 533 U.S. 678 (2001). Upon full consideration of the matters set forth in the submissions on file, and for the reasons that follow, the petition is denied.

## DISCUSSION

Petitioner challenges his continued detention by way of habeas corpus review under 28 U.S.C. § 2241, which "authorizes a district court to grant a writ of habeas corpus

whenever a petitioner is 'in custody in violation of the Constitution or laws or treaties of the United States.' " *Wang v. Ashcroft*, 320 F.3d 130, 140 (2d Cir. 2003) (quoting 28 U.S.C. § 2241(c)(3)); *see also Zadvydas*, 533 U.S. at 687 (petition under § 2241 is the basic method for statutory and constitutional challenges to detention following order of removal).

Matters pertaining to the detention of aliens pending the completion of immigration removal proceedings and pending removal following the entry of a final order of removal are governed by two separate provisions of the INA–respectively, INA § 236, which authorizes the arrest and detention of an alien on warrant pending a decision on whether the alien is to be removed from the United States, and INA § 241, which authorizes detention of aliens after the issuance of a final removal order. In this case, petitioner's detention at the time he filed his habeas petition was pursuant to INA § 241(a), which requires the Attorney General to accomplish an alien's removal from the United States within a period of ninety days (the "removal period"), commencing on the latest of the following dates:

> (i) The date the order of removal becomes administratively final.
> (ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.
> (iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

8 U.S.C. § 1231(a)(1)(B).

Detention during the ninety-day removal period is mandatory. *See* INA § 241(a)(2) ("During the removal period, the Attorney General *shall* detain the alien."). The statute also authorizes the Attorney General to continue detention of certain criminal aliens–*i.e.*, aliens

ordered removed due to conviction of an enumerated crime–beyond the expiration of the ninety-day removal period. *See* INA § 241(a)(6).[2]

In *Zadvydas*, the Supreme Court was presented with the challenge of reconciling this apparent authorization of indefinite detention with the Fifth Amendment's prohibition against depriving a person of their liberty without due process. The Court determined that INA § 241(a) authorizes detention after entry of an administratively final order of deportation or removal for a period that is "reasonably necessary" to accomplish the alien's removal from the United States. *Zadvydas*, 533 U.S. at 699-700. Recognizing the practical necessity of setting a "presumptively reasonable" time within which to secure removal, the court adopted a period of six months "for the sake of uniform administration in the federal courts …." *Id.* at 701.

> After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the "reasonably foreseeable future" conversely would have to shrink. This 6-month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.

*Id.*

---

[2]INA § 241(a)(6) provides in full as follows:

An alien ordered removed who is inadmissible under section 1182 of this title, removable under section 1227(a)(1)(C), 1227(a)(2),or 1227(a)(4) of this title or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3).

8 U.S.C. § 1231(a)(6).

To comply with the Supreme Court's ruling in *Zadvydas*, the Attorney General has promulgated regulations providing for review of the custody status of aliens who have been detained for more than six months after the issuance of a final order of removal. Under these regulations, a detainee who has been in post-removal-order custody for more than six months may submit a written request for release to DHS Headquarters Post-order Detention Unit ("HQPDU") setting forth "the basis for the alien's belief that there is no significant likelihood that the alien will be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13(d)(1). The written request must include "information sufficient to establish his or her compliance with the obligation to effect his or her removal and to cooperate in the process of obtaining necessary travel documents." 8 C.F.R. § 241.13(d)(2).

In reviewing the request for release, the agency is required to consider "all the facts of the case including, but not limited to," the following:

> [T]he history of the alien's efforts to comply with the order of removal, the history of the Service's efforts to remove aliens to the country in question or to third countries, including the ongoing nature of the Service's efforts to remove this alien and the alien's assistance with those efforts, the reasonably foreseeable results of those efforts, and the views of the Department of State regarding the prospects for removal of aliens to the country or countries in question. Where the Service is continuing its efforts to remove the alien, there is no presumptive period of time within which the alien's removal must be accomplished, but the prospects for the timeliness of removal must be reasonable under the circumstances.

8 C.F.R. § 241.13(f).

If the agency finds that the alien has met the burden of demonstrating good reason to believe there is no significant likelihood of removal in the reasonably foreseeable future, and that there are no special circumstances justifying continued detention, then it must

order the detainee released. 8 C.F.R. § 241.13(g)(1). However, the agency may impose certain conditions of release on the alien, such as requiring a bond, attendance in a rehabilitative program, or submission to a medical or psychiatric examination. *See* 8 C.F.R. §§ 241.5(b), 241.13(h)(1); *see also Zadvydas*, 533 U.S. at 695 ("[W]e nowhere deny the right of Congress to remove aliens, to subject them to supervision with conditions when released from detention, or to incarcerate them where appropriate for violations of those conditions.").

As set forth above, in this case petitioner was placed into DHS custody on March 23, 2012, upon his release from DOCCS. Item 5-1 at ¶ 10. This detention was pursuant to INA § 236 (pre-final removal order detention). The detention continued until the removal order became final on June 7, 2012, when the BIA dismissed the petitioner's appeal of the Immigration Judge's removal order. Item 5-1 at ¶ 11; *see* 8 C.F.R. § 1241.1(a). After the removal order became final, petitioner's detention was authorized under INA § 241(a), and the 90-day period for removal began. As discussed above, DHS promptly took steps to secure travel documents for petitioner's removal to Jamaica, including the submission of a presentation packet to the Consulate, service of Form I-229(a), and communication with the Consulate throughout June 2012. *See* Item 5-1 at ¶¶ 12-15. Then, on July 12, 2012, petitioner filed his petition in the Second Circuit for review of the BIA's dismissal of his appeal from the removal order, along with a motion for a stay of removal.

Numerous decisions by the federal courts within the Second Circuit have held that the filing of a petition for circuit court review of the final order of removal, accompanied by a motion for stay of removal, triggers the application of a "forbearance policy" recognized by agreement between DHS and the Second Circuit under which DHS has agreed not to

effectuate the removal of an alien while he or she has a petition for review pending before the circuit court. *See, e.g., Persaud v. Holder*, 2011 WL 5326465, at *1 (W.D.N.Y. Nov. 3, 2011) (filing of petition for circuit court review of final order of removal along with motion for stay of removal triggers "forbearance policy"); *Luna-Aponte v. Holder*, 743 F. Supp. 2d 189, 197 (W.D.N.Y. 2010) (even though circuit court had not "formally" ruled on motion to stay accompanying petition for review of BIA's dismissal of appeal from removal order, forbearance policy is "the equivalent of a court-ordered stay of removal"); *Shehnaz v. Ashcroft,* 2004 WL 2378371, at *2 (S.D.N.Y. Oct. 25, 2004) (where circuit court had not yet ruled on alien's requests to stay removal and for review of BIA's order, a stay of removal was in effect pursuant to Second Circuit forbearance policy); *cf. Abimbola v. Ridge*, 181 F. App'x 97, 99 (2d Cir. 2006) ("consistent pattern" of filing petition for circuit court review accompanied by motions to stay removal triggered application of Second Circuit's forbearance policy; petitioner's "self-inflicted wound should not establish grounds for [his] *Zadvydas* claim") (citing *Doherty v. Thornburgh*, 943 F.2d 204, 205 (2d Cir. 1991) (petitioner cannot rely on delays resulting from litigation strategy to claim that prolonged detention violates substantive due process).

Pursuant to this policy, the removal period which began on June 7, 2012, was "effectively stayed" as of July 12, 2012, when petitioner filed his petition for review and motion for stay of removal with the Second Circuit. *Luna-Aponte*, 743 F. Supp. 2d at 190. Therefore, DHS had slightly more than 30 days to obtain the travel documents necessary for execution of the removal order prior to the filing of the petition for circuit court review (during which time petitioner's detention was mandatory, *see* INA § 241(a)(2)), and cannot

resume its efforts until the Second Circuit rules either on the petition itself or on the pending motion for stay of removal.

Accordingly, because the detention challenged by the habeas petition in this action has been prolonged by petitioner's own pursuit of judicial review of the final order of removal, the duration of his detention cannot be found to constitute a violation of his rights under the due process clause of the Fifth Amendment. *Doherty*, 943 F.2d at 211 (refusing to find eight-year detention unconstitutional where alien's pursuit of judicial and administrative review caused the delay in removal); *Dor v. District Director, INS*, 891 F.2d 997, 1002 (2d Cir. 1989) (same, but with four year detention); *see also Khaleque v. Department of Homeland Sec.*, 2009 WL 81318, at *3 (W.D.N.Y. Jan. 9, 2009) (denying alien's habeas petition upon finding that alien "elected to file a petition for review and a motion for a stay of removal" which "acted to prevent his removal until the Second Circuit issued its mandate").

Alternatively, considering petitioner's habeas challenge under the due process standards set forth in *Zadvydas*, petitioner must first "provide[ ] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701. Only if he makes this initial showing does the burden shift back to the government, which "must respond with evidence sufficient to rebut that showing." *Id.*; *see also Wang*, 320 F.3d at 146 ("reasonable foreseeability" test of *Zadvydas* "articulates the outer bounds of the Government's ability to detain aliens (other than those serving criminal sentences) without jeopardizing their due process rights").

Upon review of the submissions on the present petition, the court finds that petitioner has failed to sustain his initial burden under *Zadvydas*. The petition sets forth no factual basis to substantiate petitioner's belief that there is no significant likelihood he can be removed to Jamaica in the reasonably foreseeable future. He simply alleges that the Jamaican Consulate "ha[s] not issued any travel documents and there is no certainty as to when, if ever, such papers will be issued." Item 1, ¶ 16. However, as discussed above, DHS records reflect that prompt steps were taken to secure the travel documents upon notice that the order of removal had become final, and indeed, the Consulate has indicated its readiness to proceed with the issuance of travel documents as of July 18, 2012–approximately 41 days after the removal order became final. Item 5-1 at ¶ 16. Accordingly, the request for a travel document remains pending with the Consulate, and there is nothing in the record before the court to indicate that Jamaican authorities are inclined to deny the request once petitioner's pursuit of judicial review in the federal courts is resolved.

Additionally, statistical evidence submitted to the court reveals that in recent years, DHS has successfully repatriated a significant number of aliens to Jamaica, indicating no institutional barriers to petitioner's removal. For example, DHS reports show that in fiscal year ("FY") 2009, a total of 1,664 aliens were repatriated to Jamaica; in FY 2010, 1,487 aliens were repatriated to Jamaica; and in FY 2011, 1,474 aliens were repatriated to Jamaica. *See* DHS Yearbook of Immigration Statistics: 2011, Table 41: http://www.dhs.gov/yearbook-immigration-statistics-2011-3.

Considered in their totality, these circumstances provide a reasonable basis for DHS's expectation that the verification required for the issuance of a travel document by

the Jamaican government can be accomplished within the reasonably foreseeable future following resolution of petitioner's pending request for review by the Second Circuit, after which time the necessary travel arrangements may be made for petitioner's release from custody and his repatriation to Jamaica  Significantly, petitioner has provided no evidence to contradict this expectation, or to otherwise establish compliance with the requirements of the DHS regulations described above.

Instead, petitioner relies solely on the fact that his detention has exceeded the presumptively reasonable six-month period established in *Zadvydas*. *See* Item 1, ¶ 16. However, several cases decided within this district have found the habeas petitioner's assertion as to the unforeseeability of removal, supported only by the mere passage of time, insufficient to meet the petitioner's initial burden to demonstrate no significant likelihood of removal under the Supreme Court's holding in *Zadvydas*. *See, e.g., Khaleque*, 2009 WL 81318, at *4 (petitioner failed to meet initial burden where the only evidence relied upon was the fact that the Consulate had not responded positively to the request for a travel document); *Kassama v. Dep't of Homeland Sec.*, 553 F. Supp. 2d 301, 306-07 (W.D.N.Y. 2008) (petitioner failed to meet initial burden where there was no evidentiary proof in admissible form to suggest that travel documents would not be issued); *Haidara v. Mule*, 2008 WL 2483281, at *3 (W.D.N.Y. June 17, 2008) (petitioner failed to meet initial burden where he "merely ma[de] the general assertion that he will not be returned to [his country] in the foreseeable future"); *Roberts v. Bureau of Immigration & Customs Enforcement*, 2007 WL 781925, at *2 (W.D.N.Y. Mar. 13, 2007) (petitioner who did not present evidence that his country would not provide travel documents did not meet

initial burden of proof.); *Singh v. Holmes*, 2004 WL 2280366, at *5 (W.D.N.Y. Oct. 8, 2004) (petitioner who "failed to submit anything demonstrating that there is no significant likelihood of removal in the reasonably foreseeable future" did not meet initial burden of proof); *see also Juma v. Mukasey*, 2009 WL 2191247, at *3 (S.D.N.Y. July 23, 2009) (vague, conclusory and general claims that removal is not foreseeable, and that Embassy will not issue travel document in foreseeable future, fails to meet initial burden).

Based on this authority, and upon full consideration of the record presented by way of the parties' submissions, the court finds that petitioner has failed to meet his initial burden under *Zadvydas* to "provide[ ] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," *Zadvydas*, 533 U.S. at 701, and that petitioner may not rely on the delay resulting from his request for circuit court review and stay of the final order of removal to claim that his prolonged detention violates substantive due process. Accordingly, petitioner has failed to demonstrate that he is "in custody in violation of the Constitution or laws or treaties of the United States" for the purposes of granting habeas corpus relief under 28 U.S.C. § 2241, and his petition must be denied.

## CONCLUSION

For the foregoing reasons, the petition is denied, and the case is dismissed. This dismissal is without prejudice to file another petition should it subsequently appear that the presumptively reasonable period of post-removal-order detention has elapsed, and that removal is no longer reasonably foreseeable. *See Andreenko v. Holder*, 2012 WL 4210286, at *5 (W.D.N.Y. Sept. 18, 2012); *Kassama*, 553 F. Supp. 2d at 307.

It is further ordered that certification pursuant to 28 U.S.C. § 1915(a)(3) be entered stating that any appeal from this Judgment would not be taken in good faith and therefore leave to appeal as a poor person should be denied. *Coppedge v. United States*, 369 U.S. 438 (1962).

The Clerk of the Court is directed to enter judgment in favor of respondent, and to close the case.

So ordered.

    \s\ John T. Curtin
JOHN T. CURTIN
United States District Judge

Dated: June 26 , 2013
p:\pending\2013\13-297.2241.jun24.2013